# In the United States Court of Federal Claims

|  |  |
|---|---|
| BUTTE COUNTY, IDAHO,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 19-cv-00800<br><br>Filed: January 19, 2021 |

*Steve L. Stephens*, Stephens Law Office PLLC, Arco, Idaho, for Plaintiff.

*Daniel B. Volk*, United States Department of Justice, Washington, D.C. for Defendant. With him on the briefs are *Joseph H. Hunt*, Assistant Attorney General, Civil Division, *Robert E. Kirschman, Jr.*, Director, Commercial Litigation Branch, Civil Division, *Lisa L. Donahue*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. *Bettina Mumme*, of counsel, United States Department of Energy, Washington, D.C.

## **MEMORANDUM AND ORDER**

This case involves a claim for impact assistance payments associated with storage of spent nuclear fuel. Butte County, Idaho, alleges that the U.S. Department of Energy (DOE) violated the Nuclear Waste Policy Act of 1982 (NWPA or the Act), Pub. L. No. 97-425, 96 Stat. 2201 (codified as amended at 42 U.S.C. §§ 10101-10270), by failing to pay Butte County impact assistance payments associated with Federal interim storage of spent nuclear fuel at Idaho National Laboratory (INL). *See* Amended Complaint ¶¶ 1-2, 15 (ECF No. 8) (Am. Compl.). Specifically, Butte County alleges that a contract to provide interim storage for spent nuclear fuel from Three Mile Island did not comply with requirements for interim storage of spent nuclear fuel as provided for in Title I, Part B of the NWPA, 42 U.S.C. §§ 10151-10157 (Part B). Am. Compl. ¶¶ 38-41.

Additionally, Butte County asserts that DOE failed to comply with Part B with regard to providing storage for spent nuclear fuel from the U.S. Navy by failing to deposit funds into the Interim Storage Fund in violation of 42 U.S.C. § 10156(b).  Am. Compl. ¶¶ 55, 64-65.  As relief, Plaintiff seeks an amount equal to portions of unpaid fees that it alleges DOE would have collected if DOE had abided by the interim storage requirements detailed in Part B of the NWPA.  Am. Compl. ¶ 1. In its prayer for relief, Butte County seeks annual impact assistance payments as follows: $3,607,183 for 2013; $3,622,183 for 2014; $3,640,183 for 2015; $3,656,683 for 2016; $3,689,683 for 2017; and $3,694,183 for 2018.  Am. Compl. at 25.

Defendant United States moves to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (Rule(s)) for lack of subject-matter jurisdiction, or alternatively pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Defendant's Motion to Dismiss at 1 (ECF No. 11) (Def. Mot.); Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment and Reply in Support of Dismissal at 1 (ECF No. 15) (Def. Resp.).

On October 15, 2019, Plaintiff filed a cross motion for summary judgment, reiterating its position that Plaintiffs are entitled to impact assistance payments despite the Federal Government's failure to abide by the interim storage requirements detailed in Part B.  *See* Butte County's Opposition to Defendant's Motion to Dismiss and Cross Motion (First) for Summary Judgment and Memorandum Support (ECF No. 12) (Pl. Resp. & Cross-Mot.) at 2, 39; Butte County's Reply in Support of Motion (First) for Summary Judgment (ECF No. 16) (Pl. Reply) at 16-20.

On February 27, 2020, this case was transferred to the undersigned judge pursuant to Rule 40.1(c), and this Court held oral argument on June 10, 2020.  *See* February 27, 2020 Order (ECF No. 17); Tr. of June 10, 2020 Oral Argument (ECF No. 21).  This Court has considered each of

the parties' filings and arguments in ruling on the parties' motions.  For the reasons set forth below, Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) is **GRANTED** and Plaintiff's Cross Motion for Summary Judgment is **DENIED**.

<u>BACKGROUND</u>

I. <u>Statutory Scheme for Federal Interim Storage of Spent Nuclear Fuel</u>

The NWPA, enacted in January 1983, provides a framework for the storage and disposal of radioactive waste such as spent nuclear fuel (SNF) generated by nuclear power plants.  *See* 42 U.S.C. § 10131; *PSEG Nuclear, L.L.C. v. United States*, 465 F.3d 1343, 1344 (Fed. Cir. 2006). Title I, Part B of the NWPA (Part B) addresses interim storage of commercial SNF.  42 U.S.C. §§ 10151-10157.  Under Part B, owners and operators of commercial nuclear power reactors have "the primary responsibility for providing interim storage of spent nuclear fuel from such reactors, by maximizing, to the extent practical, the effective use of existing storage facilities at the site of each civilian nuclear power reactor, and by adding new onsite storage capacity in a timely manner where practical."  *Id*. § 10151(a)(1).  Nonetheless, Congress sought to "prevent disruptions in the orderly operation of any civilian nuclear power reactor that [could not] reasonably provide adequate spent nuclear fuel storage capacity at the site of such reactor . . ." by providing for a limited capacity for Federal "interim storage."  *Id*. § 10151(b)(2).

"[T]he interim storage provisions of the Nuclear Waste Policy Act are not comprehensive regulations governing all federal storage of nuclear waste, but remedial legislation addressed to a specific problem.  Congress recognized that federal facilities could provide interim storage for a limited quantity of the spent fuel left unaccounted for by the collapse of the reprocessing industry." *State of Idaho v. U.S. Dep't of Energy*, 945 F.2d 295, 298-99 (9th Cir. 1991), *as amended on denial of reh'g* (Dec. 13, 1991).  "The Act's restrictive language limits the requirements to the specific set

of remedial storage agreements authorized by the Act itself.  Spent nuclear fuel accounted for by pre-existing agreement was not part of the pool of radioactive material for which there was no available storage and for which interim storage was necessary to ensure continued operations." *Id.* at 299.  "Each of the Act's various requirements concerning interim storage are specifically limited to contracts entered into pursuant to section 10155(a)(1)(A)." *Id.*

Specifically, the Department of Energy "shall offer to enter into, and may enter into, contracts under section 10156(a) . . ." only if the Nuclear Regulatory Commission (NRC or Commission) makes certain determinations.  42 U.S.C. § 10155(b)(1).  Under a section 10156(a) contract, "the Federal Government will (1) take title at the civilian nuclear power reactor site, to such amounts of spent nuclear fuel from the civilian nuclear power reactor as the Commission determines cannot be stored onsite, (2) transport the spent nuclear fuel to a federally owned and operated interim away-from-reactor storage facility, and (3) store such fuel in the facility pending further processing, storage, or disposal." *Id*. § 10156(a).  In exchange for these services, the generator of the SNF must pay DOE the pro rata cost of storage and related activities. *Id*. § 10156(a)(3).  The funds received from these contracts are to be deposited in an "interim storage fund." *Id*. § 10156(c).  Additionally, if the Federal Government also put its own fuel into a storage facility being used for interim storage under Part B, then the Federal Government would have to "deposit in the Interim Storage Fund, amounts equivalent to the fees that would be paid to the Secretary [of Energy] under the contracts referred to in this section if such spent nuclear fuel were generated by any other person." *Id*. § 10156(b).  The interim storage fund can be used to make "impact assistance payments" to the appropriate state and local government "in order to mitigate social or economic impacts occasioned by the establishment and subsequent operation of any interim storage capacity within the jurisdicational [sic] boundaries of such government or

4

governments . . . ." *Id*. § 10156(d), (e)(1).  However, impact assistance payments are to "be made available solely from the fees determined under subsection (a)."  *Id*. § 10156(e)(4).  Crucially, DOE was only authorized to contract for such interim storage for the period between January 7, 1983 and January 1, 1990.  *Id*. § 10156(a)(1).


II. Idaho National Laboratory Storage of Spent Nuclear Fuel

The Idaho National Laboratory (INL) is one of several major Department of Energy installations across the United States and is, in part, located within Butte County, Idaho.  Am. Compl. ¶ 18.  At the present, the Department of Energy and Butte County share overlapping and concurrent jurisdiction over the portions of the Idaho National Laboratory inside the boundaries of Butte County.  *Id*. ¶ 21.  In 1949, federally owned lands were utilized in Butte County for Atomic Energy Act activities at an installation known as the National Reactor Testing Station inside what is now the Idaho National Laboratory.  *Id*. ¶ 18.  Beginning in 1957, SNF from naval reactors, particularly those used in nuclear-powered naval vessels, has been routinely transported to the INL.  *See* Dep't of Energy Programmatic SNF Mgmt. & Idaho Nat'l Eng'g Lab. Envtl. Restoration & Waste Mgmt. Programs Final Envtl. Impact Statement, DOE/EIS-0203-F, Vol. 1, at 7 (Apr. 1995), https://www.energy.gov/nepa/downloads/eis-0203-programmatic-final-environmental-impact-statement.  DOE also has provided and continues to provide interim storage capacity for spent nuclear fuel for the United States Navy at the INL in Butte County.  Am. Compl. ¶ 53; *see also* Tr. of June 10, 2020 Oral Argument at 5:13-22.

On March 28, 1979, the "Three Mile Island" nuclear power plant located in Pennsylvania experienced partial melting of the fuel rods in one of its two reactors referred to as the TMI-2 reactor.  Am. Compl. ¶ 22.  In March 1980, DOE entered into a coordination agreement with

General Public Utilities Company (GPU), the owner of TMI-2, along with the Nuclear Regulatory Commission (NRC) and the Electric Power Research Institute (EPRI). Pl. Resp. & Cross-Mot. Appendix App. Part I (ECF No. 12-1) at A26 (R. C. Schmitt et al., DOE/ID-10400, Historical Summary of the Three Mile Island Unit 2 Core Debris Transportation Campaign (1993)). "In March 1981, NRC published an Environmental Impact Statement (EIS), which concluded that the core debris and other high-specific-activity radioactive waste materials should be removed from the TMI site because the location, geology, and hydrology of the site did not meet the criteria for a safe long-term storage/disposal facility." *Id*. at A26-27. In 1982, the Department of Energy began exploring whether it should enter a non-binding agreement, in principle, with GPU to mitigate the issues created by the Three Mile Island incident. Am. Compl. ¶ 23. That same year, DOE entered into a Memorandum of Understanding with the NRC and an "Agreement in Principle" with GPU, by which DOE agreed to accept the entire TMI-2 reactor core material for research and storage at a DOE facility. Nuclear Regulatory Commission, Executive Director for Operations, SECY-82-165, Revised NRC-DOE Memorandum of Understanding Concerning the Removal and Disposition of Solid Nuclear Wastes from Cleanup of the Three Mile Island Unit 2 Nuclear Plant, 1-2 (Apr. 19, 1982), https://www.nrc.gov/docs/ML1611/ML16110A182.pdf (NRC-DOE MOU); *see also* Am. Compl. ¶¶ 22-23. The agreement was contingent upon negotiations and execution of an actual separate written contract between DOE and GPU that was to provide the firm details of the transaction. NRC-DOE MOU at Enclosure 3 ¶ 6; Am. Compl. ¶ 23. INL was selected as the DOE facility to receive the TMI-2 reactor core material. Pl. Resp. & Cross-Mot. App. Part I at A27.

The NWPA, was signed into law on January 7, 1983. Am. Compl. ¶ 29. In 1984, DOE entered into a detailed and binding contract (Core Contract) with GPU to accept the entire core of

the TMI-2 reactor.  *See* Pl. Resp. & Cross-Mot. App. Part I at A279-365; Am. Compl. ¶ 31. Following the execution of the Core Contract between DOE and GPU, the TMI-2 spent fuel nuclear fuel was transported to the INL for storage.  Am. Compl. ¶ 35.  As a factual matter, it is undisputed that the Core Contract did not meet the requirements of Part B of the NWPA.  *Id*. ¶ 41 (acknowledging that the "contract did not refer to, contemplate or otherwise address" requirements under Part B).

Butte County now seeks payment for the interim storage of the SNF by both the Navy and GPU.  Butte County acknowledges that DOE's storage of this spent nuclear fuel was not done in accordance with Part B of the Nuclear Waste Policy Act; therefore, the statutory prerequisites for impact assistance payments are not met.  *See id*.  However, Butte County argues that DOE's interim storage of spent nuclear fuel should have complied with Part B of the NWPA and, argues therefore, that Butte County is still entitled to impact assistance payments under section 10156(e).

## APPLICABLE STANDARDS OF REVIEW

The United States Court of Federal Claims is a court of limited jurisdiction.  Through enactment of the Tucker Act, which acts as a waiver of sovereign immunity, Congress has placed within this Court's jurisdiction "any claim against the United States founded either upon the Constitution, or any act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983).  The Tucker Act is a jurisdictional statute and does not create any enforceable right against the United States on its own.  *See Mitchell*, 463 U.S. at 216; *United States v. Testan*, 424 U.S. 392, 398 (1976).

Pursuant to Rules 12(b)(1) and 12(h)(3), this Court must dismiss claims that do not fall within its subject-matter jurisdiction.  When considering a motion to dismiss based upon lack of subject-matter jurisdiction, this Court accepts as true all uncontroverted factual allegations made by the non-movant and draws all reasonable inferences in the light most favorable to that party. *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *Pixton v. B&B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002).  If a motion to dismiss for lack of subject-matter jurisdiction challenges the truth of the jurisdictional facts alleged, the Court may consider relevant evidence outside the complaint in resolving the dispute.  *See Reynolds v. Army & Airforce Exch. Serv.,* 846 F.2d 746, 747 (Fed. Cir. 1988) (citations omitted); *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff also must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft*, 556 U.S. at 678.  Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

Pursuant to Rule 56, summary judgment is appropriate only if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  A "genuine" dispute is one that "may reasonably be resolved in favor of either party," and a fact is "material" if it might significantly alter the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248,

250.   In determining the propriety of summary judgment, a court will not make credibility determinations and will draw all inferences in favor of the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

DISCUSSION

I. <u>Butte County's Claims Are Time-Barred.</u>

Plaintiff argues that "DOE should have charged GPU and the US Navy . . . an amount sufficient to make annual impact payments to Butte County for the duration of interim storage in Butte County."  Pl. Resp. & Cross-Mot. at 13.  Essentially, Plaintiff argues that the statutory prerequisites for impact assistance payments should have occurred but did not.  Plaintiff's claim, however, is time barred because Butte County should have realized that the DOE's contract with GPU did not conform with Part B of the NWPA when the contract was executed in 1984 or, at the very latest, when DOE's authority to enter into a section 10156(a) contract expired in 1990.[1]

The relevant statute of limitations provides: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."  28 U.S.C. § 2501.  "A claim first accrues within the meaning of the statute of limitations when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action."  *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1455 (Fed. Cir. 1997) (internal citation and quotation omitted).  The issue of "whether the pertinent events have occurred is determined under an

---

[1] The exact accrual date is difficult to determine.  Though GPU entered into a contract that did not provide for impact assistance fees in 1984, SNF was not stored at INL until around 1986.  *See* Am Compl. ¶ 43.  However, Plaintiff did not file this action until May of 2019, nineteen (19) years after the statutory authority to cure any defect in the 1984 contract had expired.  Therefore, the Court does not need to determine the exact accrual date for purposes of ruling on Defendant's Motion to Dismiss.

objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1381 (Fed. Cir. 2012) (quoting *Fallini v. United States,* 56 F.3d 1378, 1380 (Fed. Cir. 1995)); *Ariadne Fin. Servs. Pty. Ltd. v. United States*, 133 F.3d 874, 878 (Fed. Cir. 1998) (holding that claimaint's breach of contract claim accrued when claimant should have known that it had been damaged by the government's breach).  In general, "the proper focus in determining the date of accrual "is upon the time of the [defendant's action or inaction], not upon the *consequences* of the acts became most painful." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (emphasis in original) (internal citation and quotation omitted).

While section 10156(e) provides that impact assistance payments are derived exclusively from the fees paid by those entering into contracts with DOE for federal interim storage, no such fees were ever collected.  *See* Am. Compl. ¶ 50 ("[DOE] failed to collect fees pursuant to Section 10156."); 42 U.S.C. §§ 10156(e)(4) ("Payments under this subsection shall be made available solely from the fees determined under subsection (a)."), 10156(a)(1) ("Each such contract shall . . . provide for payment to the Secretary [of Energy] of fees determined in accordance with the provisions of this section . . . .").  Thus, one of the triggering events for potential compensation under 42 U.S.C. § 10156(e) is the execution of a section 10156(a) contract.  In the absence of any contract for storage under section 10156(a), no fees for impact assistance payments could be collected.

In March 20, 1984, DOE entered into a contract with GPU to take title and provide interim storage of commercial spent nuclear fuel from TMI-2.  Butte County alleges that this contract was unlawful because DOE did not require GPU to pay the entire cost or a pro rata share of the costs of interim storage.  Pl. Resp. & Cross-Mot. The statutory authority to enter into such a contract

expired on January 1, 1990.  42 U.S.C. § 10156(a).  Liability arising from the Defendant's failure to enter into a section 10156(a) contract arose when DOE entered into a contract with GPU or at latest, the date on which DOE's authority to enter into a 10156(a) contract expired.  *See Hart v. United States*, 910 F.2d 815, 817 (Fed. Cir. 1990) (stating that a claim accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action") (quoting *Kinsey v. United States*, 852 F.2d 556, 557 (Fed. Cir. 1988)).  By 1990, Butte County should have known that it was no longer possible for DOE to enter into a contract to collect such fees.  *Art Ctr. Sch. v. United States*, 142 F. Supp. 916, 918 (Ct. Cl. 1956) (party is charged with "constructive notice of public laws and regulations.").  Thus, at the latest, the applicable statute of limitations expired six years later, in 1996, more than two decades ago.  28 U.S.C § 2501.

Butte County offers no explanation for why it did not at least assert its complaint within six years, by 1996—six years after the authority for Part B of NWPA expired.  At oral argument, when this Court inquired into the reasons for Butte County's inaction, Plaintiff stated that it is a "small local government" and "didn't align itself with the State of Idaho in the early 1990s," which counsel candidly admitted were not "great excuse[s]" for not suing earlier.  *See* Transcript of Oral Argument, dated June 10, 2020. 2020 (Tr.) at 31-32.  While the Court appreciates counsel's forthrightness, unfortunately this does not justify Butte County's failure to commence suit within the six-year statute of limitations.  Indeed, this is the exactly the type of scenario 28 U.S.C. § 2501 seeks to avoid.

Plaintiff attempts to side-step the time bar, arguing that the "continuing claims doctrine" applies because impact assistance payments are assessed annually; therefore, according to Butte

County, a new independent claim accrues every year, bringing the claimed amounts within the applicable limitations period.  *See* Pl. Resp. & Cross-Mot. at 23-30.

This Court disagrees.  For the continuing claim doctrine to apply, a plaintiff must plead a series of distinct events, each giving rise to a separate cause of action.  *Ariadne Fin. Servs. Pty. Ltd.*, 133 F.3d at 879 (citing *Brown Park Estates–Fairfield Dev. Co.*, 127 F.3d at 1456; *Friedman v. United States,* 310 F.2d 381, 384–85 (Ct. Cl. 1962)).  "In order for the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages . . . [A] claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim."  *Brown Park Estates-Fairfield Dev. Co.*, 127 F.3d at 1456.

The continuing claim doctrine is inapplicable here where all the events giving rise to liability occurred when DOE entered into the alleged unlawful contract with GPU in 1984 or, at the very latest, when the authority to enter into a section 10156(a) contract expired in 1990.  Every failure to pay an annual impact assistance payment stems from Defendant's failure to enter into a proper 10156(a) contract by January 1, 1990.  In other words, Butte County's harm does not arise out of a series of failures to make periodic payments but rather out of a single failure to enter into a proper 10156(a) contract.  The United States Court of Appeals for the Federal Circuit has similarly rejected the application of the continuing claim doctrine to statutory claims accruing from a single event.  In *Hart v. United States*, 910 F.2d 815, 818 (Fed. Cir. 1990), the statute at issue required that after a service member's death, the service member's widow was entitled to an annuity that was payable each month for the prior month's SBP annuity benefit.  *Hart*, 910 F.2d at 818.  The widow argued that her claim as to that monthly sum "first accrues" on the first day of

each month.  *Id*.  The Federal Circuit disagreed stating that "all events necessary to her benefits claim had occurred when her husband died . . . ."  *Id*.

Butte County's argument is nearly identical to the argument rejected by the Federal Circuit in *Hart*.  Like the statute in *Hart*, section 10156(e) states that impact assistance payments shall be made periodically.  However, as in *Hart*, the government's failure to make periodic payments stems from a single action or inaction.  In this case, every failure to pay an annual impact assistance payment stems from the Federal Government's failure to enter into a proper 10156(a) contract by January 1, 1990.  *See Lane v. United States*, 208 Ct. Cl. 955, 955-56 (1975) (granting a motion to dismiss because claimant's claim for active duty pay was not a continuing claim but accrued all at once and, therefore, was barred by the statute of limitations).

Plaintiff's reliance on *Wells* and *Burich* is misplaced.  In *Wells v. United States*, the Federal Circuit held that a continuing claim exists where "each such wrong or event having its own associated damages—[such as] the difference between the amount permissible under [statute] and the actual deduction . . . constituted an alleged violation of a statute . . . that accrued when that particular wrong occurred, independent of the accrual of other wrongs."  420 F.3d 1343, 1346-47 (Fed. Cir. 2005).  Similarly, in *Burich v. United States*, the Federal Circuit's predecessor court held the continuing claim doctrine applicable where the plaintiff asserted that he was entitled to hourly-computed overtime payments rather than the premium payments he had received for his overtime work.  366 F.2d 984, 986-86 (Ct. Cl. 1966).  Both *Wells* and *Burich* involved a series of distinct affirmative acts by the government and each of these affirmative acts was associated with its own separate and a distinct harm.  In *Wells*, each over-deduction was a separate wrong.  420 F.3d at 1346.  In *Burich*, each underpayment constituted a separate alleged wrong.  366 F.2d at 987.  Unlike in *Burich* and *Wells*, the failure to make impact assistance payments here can be traced to

a singular failure on the part of the Defendant—the failure to enter into a contract that collected fees for impact assistance payments. *See* 42 U.S.C. § 10156(a), (e)(4) (requiring that impact assistance payments "be made available solely from the fees determined under subsection (a)). Without a 10156(a) contract, there was no entitlement to periodic payments. In this respect, Plaintiff's claim may be better characterized as a failure to enter into a 10156(a) contract rather than a failure to make periodic payments.

Butte County's claims related to the spent nuclear fuel sent by the Navy (Naval SNF) fail for the same reason. Impact assistance payments for Naval SNF are subject to the same limitations as SNF generated by civilians. Section 10156(b) states:

> "No spent nuclear fuel generated or owned by [the Navy] may be stored by the Secretary [of Energy] in any storage capacity provided under this part unless such department transfers to the Secretary, for deposit in the Interim Storage Fund, amounts equivalent to the fees that would be paid to the Secretary under the contracts referred to in this section if such spent nuclear fuel were generated by any other person."

42 U.S.C. § 10156(b). It is undisputed that the phrase "under this part" is a reference to Part B of the NWPA and therefore section 10156(b) only applies to Navy SNF, which is stored with civilian generated SNF already stored under Part B of the NWPA. *Id.*; *see also* 42 U.S.C. § 10151(b) (explaining that the purpose of Part B is to provide interim storage for civilian SNF). Thus, in order to prove entitlement for impact assistance payments related to the storage of Navy SNF, Butte County would have to prove that DOE was storing civilian SNF in accordance with Part B of the NWPA. *See* 42 U.S.C. § 10156(e)(4) (limiting impact assistance payments to amounts determined under 42 U.S.C. § 10156(a) which, in turn, authorizes DOE to enter into contracts for storage of civilian generated SNF). After expiration of DOE's 10156(a) contracting authority in 1990, Butte County knew or should have known that GPU SNF, or SNF from any other civilian generator, could not be stored in accordance with Part B. *See* 42 U.S.C. § 10156(a). Therefore, if

Butte County was ever entitled to impact assistance payments related to the storage of Naval SNF, any claim for those payments accrued in 1990—the latest date on which DOE could have stored civilian SNF in accordance with Part B of the NWPA.  *Id.*

Because Butte County's impact assistance claims were not timely asserted within six years of the expiration of DOE's statutory authority to enter into contracts under Part B of the NWPA, Butte County's amended complaint is time-barred and must be dismissed.

II. Butte County Failed to Meet Statutory Prerequisites for Impact Assistance Payments.

Even if Plaintiff's claims were not time-barred, its claims would nevertheless fail as a matter of law because it cannot show that it is entitled to impact assistance payments under 42 U.S.C. § 10156(e).  Those payments were premised on DOE having entered into a contract in accordance with section 10156(a).  Plaintiff's own Complaint acknowledges that DOE never entered into such a contract.  *See* Am. Compl. ¶ 41.  Accordingly, even if within the applicable statute of limitations, Plaintiff's claim must be dismissed pursuant to Rule 12(b)(6).

As noted, impact assistance payments are applicable only for SNF stored pursuant to the requirements outlined in Part B of the NWPA.  *See supra* Discussion, Part I.  It is undisputed that neither the Navy's SNF or GPU's SNF were (rightly or wrongly) stored in accordance with Part B of the NWPA.[2]  *See e.g.*, Am. Compl. ¶ 41 (asserting the "contract did not refer to, contemplate

___

[2] The Atomic Energy Act of 1954 (AEA) gave DOE the authority to store SNF at the INL.  42 U.S.C. § 2011 *et seq.*  Nothing in Title I, Part B of the NWPA expressly repealed the AEA, and repeals by implication on strongly disfavored.  *See Cty. of Yakima v. Confederated Tribes & Bands of Yakima Indian Nation*, 502 U.S. 251, 262 (1992) (quoting *Posadas v. Nat'l City Bank of New York*, 296 U.S. 497, 503(1936)); Pl. Reply at 3 (agreeing that Title I, Part B of the NWPA does not repeal the AEA).  DOE's contract with GPU stated: "this Agreement is executed under the authority of the Atomic Energy Act of 1954, as amended, and the DOE Organization Act (P.L. 95-91)."  Pl. Resp. & Cross-Mot. App. Part I at A283.  Moreover, the NRC has made clear that it was never asked to make the determinations necessary under § 10155(b)(1) to allow for DOE to enter into a section 10156(a) contract.  *In re Private Fuel Storage*, *LLC*, CLI-02-29, 56 N.R.C. 390, 395

or otherwise address" the requirements under Title I, Part B of the NWPA); Pl. Resp. & Cross-Mot. at 33 ("Butte County's causes of action do not rely on and are not required to show that the core contract complies with Subtitle B; Butte County need only show that the core contract should have complied with the NWPA when the core contract created an enforceable obligation on the United States."). A plaintiff pursuing a statutory claim in this Court must demonstrate that a "specific provision of law embodies a command to the United States to pay the plaintiff some money, upon proof of conditions which he is said to meet." *Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1008 (Ct. Cl. 1967). Under the statute on which Butte County relies, DOE and the NRC needed to meet various requirements prior to storing civilian SNF on an interim basis. *See supra* Background, Part I. Impact assistance payments were payable exclusively from fees collected from fees determined under 42 U.S.C. § 10156(a). As Butte County's own amended complaint points out, DOE had published a fee schedule for interim storage under Title I, Part B of the NWPA, but the 1984 TMI-2 contract did not require GPU to pay such fees. Am. Compl. ¶ 41. Butte County has not alleged that any other civilian SNF was stored in accordance with section 10156(a) or any other provision in Part B of the NWPA. The DOE's authority to meet Part B's requirements, which may have entitled Butte County to impact assistance payments, has expired. 42 U.S.C. § 10156(a). Accordingly, there is no possibility that the statutory requirements for impact assistance payments can be satisfied; therefore, even if not time-barred, Butte County's amended complaint must be dismissed pursuant to Rule 12(b)(6).

---

(Dec. 18, 2002) ("The option to use federal interim storage expired in 1990, with no generators having ever taken advantage of the program." (citation omitted)). Accordingly, Defendant credibly argues that storage of TMI-2 was accomplished pursuant to the Federal Government's authority under the AEA. Def. Mot. at 16-17; *see also* Def. Reply at 6-8. However, this Court does not need to reach the issue of whether DOE's contract with GPU was lawful as Butte County's sole claim is related to impact assistance payments under section 10156(e), and it is undisputed that the statutory prerequisites outlined in Part B of the NWPA were not met.

Butte County maintains that the impact assistance payments are due regardless of whether DOE entered into a 10156(a) contract because "the entire statutory scheme of the Interim Storage Program is designed around the cost burden being borne entirely by the commercial generators and not the taxpayers." *See* Pl. Resp. & Cross-Mot. at 14-15, 22-33.  It therefore follows, according to Butte County, that the failure to enter into a 10156(a) contract is merely a failure to appropriate funds for assistance, which it alleges does not relieve Defendant of the obligation to pay those funds.  *See* Pl. Resp. & Cross-Mot. at 14-22.

Butte County's interpretation is at odds with the plain language of 10156(e).  Though Plaintiff is correct that Congress can create an obligation to pay directly by statute, Congress has not done so here.  Impact assistance payments under 42 U.S.C. § 10156(e) are premised on DOE having entered into a contract exercising its authority under subsection 10156(a).  42 U.S.C. § 10156(e)(4) states, "[p]ayments under this subsection shall be made available solely from the fees determined under subsection (a)."  A lack of fees collected from a section 10156(a) contract is not an appropriations limitation; it is an obligations limitation.  The phrase "shall be made available" indicates that fees collected from a section 10156(a) contract operates as a precondition upon the statutory entitlement to these funds.  In other words, if fees are not determined under a 10156(a) contract, then payments are not merely "unfunded" but rather "unavailable."  *Accord Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1322 & n.7 (2020) (discussing how "subject to" language may restrict "shall pay" language): *see also* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 101 § 13, p. 126-128 (2012) (citing *Weinstock v. Holden*, 995 S.W.2d 411, 418 (Mo. 1999) (finding "subject to appropriations" to  mean "[o]nly after appropriation does [entitlement become] legally enforceable.")).

17

This interpretation comports with Congress's stated purpose underlying the NWPA of holding persons owning and operating nuclear power reactors financially responsible for storage of spent nuclear fuel.  *See* 42 U.S.C. § 10151(a)(1) ("Congress finds that . . . persons owning and operating civilian nuclear power reactors have the primary responsibility for providing interim storage of spent nuclear fuel from such reactors . . . .").  If, as Plaintiff, suggests, impact assistance fees could be made available without collecting those fees from the GPU, the NWPA's stated purpose would be undermined, as those fees would have to be passed to the Federal Government and in turn to the taxpayers.  Accordingly, even if Plaintiff's claims were not time-barred, which is not the case here, those claims would still fail.

<u>CONCLUSION</u>

For the reasons set forth herein, this Court **GRANTS** Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) (ECF No. 11) and **DENIES** Plaintiff's Cross Motion for Summary Judgment (ECF No. 12).  The Clerk of Court is directed to enter final judgment in favor of Defendant and **DISMISS** Plaintiff's Amended Complaint.

IT IS SO ORDERED.

                                             s/ Eleni M. Roumel
                                             ELENI M. ROUMEL
                                             Chief Judge

Dated:  January 19, 2021
Washington, D.C.

18